IN THE SUPREME COURT OF NORTH CAROLINA

No. 355PA18

Filed 16 August 2019

STATE OF NORTH CAROLINA

v.

SHELLEY ANNE OSBORNE

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 821 S.E.2d 268 (N.C. Ct. App. 2018), vacating in part and finding no error in part in judgments entered on 21 February 2017 by Judge Edwin G. Wilson, Jr. in Superior Court, Randolph County. Heard in the Supreme Court on 29 May 2019 in session in the State Capitol Building in the City of Raleigh.

> *Joshua H. Stein, Attorney General, by Derrick C. Mertz, Special Deputy Attorney General, for the State-appellant.*
>
> *Meghan Adelle Jones for defendant-appellee.*

ERVIN, Justice.

The issue before the Court in this case is whether the Court of Appeals erroneously determined that the trial court erred by denying defendant Shelley Anne Osborne's motion to dismiss a charge of possession of heroin for insufficiency of the evidence. After careful consideration of the record in light of the applicable law, we reverse the decision of the Court of Appeals and remand this case to the Court of

Appeals for consideration of defendant's remaining challenge to the trial court's judgment.

## I. Factual Background

### A. Substantive Facts

On 17 November 2014, officers of the Archdale Police Department responded to a call emanating from a local Days Inn hotel, in which they found defendant; a second woman; and defendant's two children, who appeared to be approximately four and five years old. According to Officer Jeffrey Harold Allred, the Archdale Days Inn is a place where "it's easier for people that want to do those types of things – prostitution, drugs – to – to get a room" given the hotel's cheap rates. Officer Jeremy Paul Flinchum testified that he had seen heroin, which he described as a grayish-tan or white rock, in the past and that he had responded to eight to ten heroin overdose calls during his law enforcement career.

After arriving at the Days Inn, Officer Flinchum found defendant, who was "unresponsive," "turning blue" around her face and lips, and having difficulty breathing, in a hotel room bathroom. Upon regaining consciousness, defendant "confirm[ed] to [Officer Flinchum] that she had ingested heroin." According to Officer Flinchum, investigating officers found "a syringe that had been thrown over the balcony into the parking lot"; syringes in the hotel room's refrigerator; two spoons, which are objects "used in part of the process of making the rock into a fluid substance to introduce to the body," one of which had a "residue"; and "some heroin," which took

a "rock form," had "a white, grayish color," and reacted positively when field-tested for the presence of heroin. Similarly, Officer Allred testified, without objection, that the substance seized from defendant's hotel room appeared to be heroin and that paraphernalia like that discovered in defendant's hotel room was typically used to ingest heroin. Officer Phillip Patton Love also testified, without objection, that, following his entry into defendant's hotel room, he collected "the rock heroin" that was found at the scene and that syringes and burnt spoons are "normal stuff you see when we . . . show up at overdoses that are dealing with heroin." Officer Flinchum conducted a second field test of the substance found in defendant's hotel room in the presence of the jury and testified, without objection, that the test was positive for the presence of heroin.

### B. Procedural History

On 14 September 2015, the Randolph County grand jury returned bills of indictment charging defendant with possession of heroin and two counts of misdemeanor child abuse. The charges against defendant came on for trial before the trial court and a jury at the 20 February 2017 criminal session of the Superior Court, Randolph County.

At the close of the State's case, defendant unsuccessfully moved to dismiss the heroin possession charge for insufficiency of the evidence, arguing, in part, that the State was required, in accordance with this Court's decision in *State v. Ward*, 364 N.C. 133, 147, 694 S.E.2d 738, 747 (2010), to establish the identity of the substance

that defendant allegedly possessed using a chemical test and that "a visual inspection is not enough" to support a determination that the substance in question was heroin. After resting without presenting any evidence, defendant renewed her dismissal motion, which the trial court again denied.

On 21 February 2017, the jury returned verdicts finding defendant guilty as charged. Based upon the jury's verdicts, the trial court entered a judgment sentencing defendant to a term of six to seventeen months imprisonment based upon her conviction for possessing heroin and a second judgment sentencing defendant to a consecutive term of sixty days imprisonment based upon her consolidated convictions for misdemeanor child abuse. However, the trial court suspended defendant's sentences for a period of twenty-four months and placed defendant on supervised probation subject to the usual terms and conditions of probation and the special condition that defendant participate in drug treatment. Defendant noted an appeal to the Court of Appeals from the trial court's judgments.

In seeking relief from the trial court's judgments before the Court of Appeals, defendant contended, among other things, that the trial court had erred by denying her motion to dismiss the heroin possession charge on the grounds that the State had failed to present sufficient evidence to show that the substance that defendant allegedly possessed was heroin.[1] *State v. Osborne*, 821 S.E.2d 268, 270 (N.C. Ct. App.

---

[1] In addition, defendant argued that the trial court had plainly erred by admitting certain evidence identifying the substance located in the hotel room as heroin. As a result of

2018). In determining that "the State's evidence did not establish beyond a reasonable doubt that the seized substance was heroin," *id.* at 272 (citing *Ward*, 364 N.C. at 147, 694 S.E.2d at 747), the Court of Appeals held that the State was required under *Ward* to establish the identity of controlled substances using "some form of scientifically valid chemical analysis" and that defendant could not be properly convicted of heroin possession in the absence of such evidence, *id.* at 269-70 (quoting *Ward*, 364 N.C. at 147, 694 S.E.2d at 747). Because defendant "did not identify the seized substance as heroin" and, instead, "told the officers that she had ingested heroin," the Court of Appeals held that this case was distinguishable from cases upholding controlled substance-related convictions based upon the defendant's admission to or presentation of evidence concerning the identity of the substance in question. *Id.* at 271 (describing *State v. Nabors*, 365 N.C. 306, 718 S.E.2d 623 (2011), and *State v. Williams*, 367 N.C. 64, 744 S.E.2d 125 (2013), as holding "that a defense witness's in-court testimony identifying a substance as cocaine was sufficient to overcome a motion to dismiss even in the absence of forensic analysis," and describing *State v. Ortiz-Zape*, 367 N.C. 1, 743 S.E.2d 156 (2013), as holding "that an officer's testimony concerning the defendant's out-of-court identification of the substance as cocaine, combined with the officer's own testimony that the substance appeared to be cocaine, was sufficient to survive a motion to dismiss"). The Court of Appeals

---

its decision to vacate defendant's conviction on sufficiency of the evidence grounds, the Court of Appeals did not reach defendant's evidentiary claim.

observed that it had attempted "to synthesize this line of cases into a coherent rule of law" in *State v. Bridges*, 810 S.E.2d 365 (N.C. Ct. App.), *disc. rev. denied*, 371 N.C. 339, 813 S.E.2d 856 (2018), in which a police officer's unobjected to testimony that the defendant had made an extrajudicial admission that she had "a bagg[ie] of meth hidden in her bra" and that he had located such a baggie in her bra sufficed to support the denial of a motion to dismiss for insufficiency of the evidence. For this reason, the Court of Appeals expressed its "reluctan[ce] to further expand the *Bridges* holding to apply in cases where the defendant did not actually identify the seized substance" given the likelihood that such a holding would "eliminate the need for scientifically valid chemical analysis in many — perhaps most — drug cases" and undermine this Court's decision in *Ward*. *Osborne*, 821 S.E.2d at 271. Employing this logic,[2] the Court of Appeals held that, given the State's concession that it had failed to present evidence of a "scientifically valid chemical analysis identifying the seized substance as heroin," the State had not "establish[ed] beyond a reasonable doubt that the seized substance was heroin" and that the trial court had erred by denying defendant's motion to dismiss for insufficiency of the evidence. *Id.* at 272 (citing *Ward*, 364 N.C. at 147, 694 S.E.2d at 747). As a result, the Court of Appeals vacated the trial court's judgment stemming from defendant's heroin possession conviction. *Id.* This Court

---

[2] The Court of Appeals noted that "this issue is unsettled and may merit further review in our Supreme Court." *Osborne*, 821 S.E.2d at 270.

granted the State's petition seeking discretionary review of the Court of Appeals' decision.

## II.  Substantive Legal Analysis

In seeking to persuade us to reverse the Court of Appeals' decision, the State argues that, had the Court of Appeals viewed the admitted evidence in the light most favorable to the State, as decisions such as *State v. Mann*, 355 N.C. 294, 301, 560 S.E.2d 776, 781 (2002), and *State v. Robbins*, 309 N.C. 771, 774–75, 309 S.E.2d 188, 190 (1983), require, it would have determined that the field "tests correctly and chemically confirmed the substance's identity as heroin."  In the State's view, the Court of Appeals "ignore[d] the field tests" and violated a "long standing maxim," articulated by this Court in *State v. Vestal*, 278 N.C. 561, 567, 180 S.E.2d 755, 760 (1971), that courts consider "incompetent evidence which has been admitted . . . as if it were competent" in determining the sufficiency of the evidence to support a defendant's conviction.  Relying upon *State v. Lane*, 365 N.C. 7, 27, 707 S.E.2d 210, 223 (2011), and *State v. McCraw*, 300 N.C. 610, 618-19, 268 S.E.2d 173, 178 (1980), the State contends that defendant's failure to object to the admission of the field tests at trial rendered the results of those tests "properly considered by the jury" and relieved the State of any need to show that the tests were "a sufficiently valid or reliable method of identifying heroin."  According to the State, it "did not dispute whether — let alone concede that — a chemical field test for the presence of heroin was not a scientifically valid chemical analysis," as it "had no need to do so."

In addition, the State contends that, even if the field tests did not, standing alone, suffice to identify the substance that defendant allegedly possessed, the evidence, when viewed in its entirety, "was nevertheless sufficient to establish the substance's identity as heroin." In support of this assertion, the State notes that *Ward* addressed the issue of the admissibility of evidence concerning the identity of a controlled substance rather than the sufficiency of the evidence to support a conviction and is not, for that reason, relevant to the issue that is before the Court in this case. On the contrary, the State asserts that the sufficiency of the evidence to establish the identity of the substance that defendant allegedly possessed should be decided based upon our decision in *Nabors*, 365 N.C. at 313, 718 S.E.2d at 627, in which the testimony of one of the defendant's witnesses identifying the substance that the defendant allegedly possessed with the intent to sell or deliver as cocaine sufficed to preclude allowance of a motion to dismiss for insufficiency of the evidence. In the State's view, defendant's admission to the investigating officers that she had ingested heroin, like the testimony at issue in *Nabors*, was sufficient to support defendant's heroin possession conviction. According to the State, "[s]o long as an oral admission works as a proper method of identification," "it should do so here" as well.

In seeking to persuade us to affirm the Court of Appeals' decision, defendant argues that, in order to convict a person of possessing a controlled substance, the State must prove the identity of the substance in question by adducing evidence of a scientifically valid chemical analysis performed by a person with expertise in

interpreting the results of such an analysis. In support of this argument, defendant relies upon the fact that heroin is defined in N.C.G.S. § 90-89(2)(j) "in terms of its chemical composition." In defendant's view, the use of a definition like that set out in N.C.G.S. § 90-89(2)(j) implies, given the logic utilized in *Ward*, 364 N.C. at 143–44, 694 S.E.2d at 744, "the necessity of performing a chemical analysis to accurately identify controlled substances before the criminal penalties in [Section] 90-95 are imposed." Similarly, defendant contends that *State v. Llamas-Hernandez*, 189 N.C. App. 640, 652, 659 S.E.2d 79, 86 (2008) (Steelman, J., concurring, in part, and dissenting, in part), *rev'd per curiam for reasons stated in dissent*, 363 N.C. 8, 673 S.E.2d 658 (2009), clearly indicates that expert testimony is required to establish that the substance that the defendant had been charged with possessing is, in fact, a controlled substance.

In addition, defendant directs our attention to *State v. McKinney*, 288 N.C. 113, 118–19, 215 S.E.2d 578, 582 (1975), and *State v. Board*, 296 N.C. 652, 658–59, 252 S.E.2d 803, 807 (1979), in which we reversed Court of Appeals decisions affirming convictions for distributing THC and possessing and distributing MDA, respectively, on the grounds that the State had failed to adduce sufficient evidence to establish the identity of the substances in question. In defendant's view, *McKinney* and *Board* stand for the proposition that a chemical analysis is necessary in order to establish the identity of a particular controlled substance. Similarly, defendant argues that our decision in *Nabors* does not control the outcome in this case given that the

defendant in that case, who elicited evidence from one of his own witnesses that the substance that he allegedly both possessed and sold and delivered was cocaine, invited the error about which he sought to complain on appeal. In the same vein, defendant argues that in *Williams*, 367 N.C. at 69, 744 S.E.2d at 125, and *Ortiz-Zape*, 367 N.C. at 13–14, 743 S.E.2d 156, both of which relied upon *Nabors* in upholding controlled substance convictions on harmless error grounds, the record contained evidence tending to show that the defendant had identified the relevant substance as cocaine. In this case, on the other hand, defendant did not present any evidence identifying the substance that she was charged with possessing as heroin.

In defendant's view, the field tests performed by Officer Flinchum do not constitute acceptable methods for proving the identity of a controlled substance. In advancing this argument, defendant deduces that the tests in question were "color test reagents for the preliminary identification of drugs" and directs our attention to a law review article and news reports stating that "[s]uch drug tests are subject to no regulation by a central agency" and "routinely produce false positives." In addition, defendant notes that the General Assembly has determined that evidence concerning the "actual alcohol concentration result" derived from the performance of a portable breath test cannot be utilized in determining whether reasonable grounds exist for believing that an implied consent offense had been committed and argues that the enactment of the relevant statutory provision indicates that the field tests utilized in

this case should not be deemed sufficient to support the denial of a motion to dismiss for insufficiency of the evidence.

Finally, defendant argues that the other evidence upon which the State relied in order to identify the substance that defendant allegedly possessed as heroin, such as the testimony of Officers Flinchum, Allred, and Love that, in their opinion, the substance in question appeared to them to be heroin on the basis of a visual examination and defendant's admission that she "had ingested heroin," should not suffice to identify the substance that defendant was charged with possessing as heroin given that the testimony of the investigating officers did not rest upon scientifically reliable chemical tests admitted using expert testimony and that, unlike the situations at issue in *Nabors* and *Williams*, witnesses presented by defendant did not identify the substance that was located in the hotel room and that formed the basis of the drug possession charge as heroin. As a result, defendant urges us to affirm the Court of Appeals' decision to overturn her heroin possession conviction.

"Felonious possession of a controlled substance has two essential elements. The substance must be possessed and the substance must be knowingly possessed." *State v. Galaviz-Torres*, 368 N.C. 44, 48, 772 S.E.2d 434, 437 (2015) (quoting *State v. Weldon*, 314 N.C. 401, 403, 333 S.E.2d 701, 702 (1985)). Put another way, in order "[t]o obtain a conviction for possession of a controlled substance, the State bears the burden of proving two elements beyond a reasonable doubt: (1) defendant possessed

the substance; and (2) the substance was a controlled substance." *State v. Harris*, 361 N.C. 400, 403, 646 S.E.2d 526, 528 (2007) (citing N.C.G.S. § 90–95(a) (2005)).

"In ruling on a motion to dismiss, the trial court need determine only whether there is substantial evidence of each essential element of the crime and that the defendant is the perpetrator." *State v. Winkler*, 368 N.C. 572, 574, 780 S.E.2d 824, 826 (2015) (quoting *Mann*, 355 N.C. at 301, 560 S.E.2d at 781). Substantial evidence is the amount "necessary to persuade a rational juror to accept a conclusion." *Id.* at 574, 780 S.E.2d at 826 (quoting *Mann*, 355 N.C. at 301, 560 S.E.2d at 781). In evaluating the sufficiency of the evidence to support a criminal conviction, the evidence must be considered "in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom." *Id.* at 574, 780 S.E.2d at 826 (quoting *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980)). In other words, if the record developed before the trial court contains "substantial evidence, whether direct or circumstantial, or a combination, 'to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied.'" *Id.* at 575, 780 S.E.2d at 826 (quoting *State v. Golphin*, 352 N.C. 364, 458, 533 S.E.2d 168, 229 (2000)). "Moreover, both competent and incompetent evidence that is favorable to the State must be considered by the trial court in ruling on a defendant's motion to dismiss." *State v. Nabors*, 365 N.C. at 312, 718 S.E.2d at 627 (citing *State v. Israel*, 353 N.C. 211, 216, 539 S.E.2d 633, 637 (2000)).

In determining whether the evidence presented for the jury's consideration was sufficient to identify the substance located in defendant's hotel room as heroin, the Court of Appeals stated that "the question is not whether the State's evidence was strong, but whether that evidence 'establish[ed] the identity of the controlled substance beyond a reasonable doubt,'" *Osborne*, 821 S.E.2d at 271 (alteration in original) (quoting *Ward*, 364 N.C. at 147, 694 S.E.2d at 747), and concluded that, "[a]pplying *Ward* here, the State's evidence did not establish beyond a reasonable doubt that the seized substance was heroin,"[3] *id.* at 272 (citing *Ward*, 364 N.C. at 147,

---

[3] The statement from the Court of Appeals' decision quoted in the text can be read as suggesting, perhaps inadvertently, that an appellate court reviewing a sufficiency of the evidence claim is required to determine both that the record contains evidence tending to show the existence of each element of the charged offense and that the jury could reasonably find the existence of each element of the offense charged beyond a reasonable doubt based upon the evidence in question. Our sufficiency of the evidence jurisprudence does not call for such a two-step inquiry, which tends to suggest the appropriateness of some sort of appellate credibility determination rather than leaving all such credibility determinations to the jury. *See, e.g., State v. Hyatt*, 355 N.C. 642, 665–66, 566 S.E.2d 61, 76–77 (2002) (rejecting the defendant's argument that the testimony of witnesses who "were felons with significant criminal histories," whose "respective accounts of the events at trial [both] conflicted with earlier statements to police" and "were self-serving," did not constitute sufficient evidence to support defendant's convictions for first-degree murder, robbery with a dangerous weapon, and first-degree kidnapping on the grounds that the "[d]efendant's proposition would occasion the fall of a long-standing principle in our jurisprudence that we are unprepared to abandon: that it is the province of the jury, not the court, to assess and determine witness credibility" (first citing *State v. Parker*, 354 N.C. 268, 278, 553 S.E.2d 885, 894 (2001); then citing *State v. Bonney*, 329 N.C. 61, 77, 405 S.E.2d 145, 154 (1991); then citing *State v. Orr*, 260 N.C. 177, 179, 132 S.E.2d 334, 336 (1963); then citing *State v. Wood*, 235 N.C. 636, 637-38, 70 S.E.2d 665, 667 (1952); then citing *State v. Bowman*, 232 N.C. 374, 376, 61 S.E.2d 107, 108–09 (1950); and then citing *State v. McLeod*, 196 N.C. 542, 544–45, 146 S.E. 409, 410 (1929))); *State v. Robinson*, 355 N.C. 320, 336, 561 S.E.2d 245, 255–56 (2002) (stating that, in ruling upon a motion to dismiss for insufficiency of the evidence "[t]he trial court does not weigh the evidence, consider evidence unfavorable to the State, or determine any witness' credibility") (quoting *Parker*, 354 N.C. at 278, 553 S.E.2d at 894)); *State v. Barnes*, 334 N.C. 67, 75-76, 430 S.E.2d 914, 919 (1993) (stating that, "[o]nce the court decides that a reasonable inference of defendant's guilt may be drawn from the circumstances, then ' "it is for the jury

694 S.E.2d at 747)). In essence, the Court of Appeals accepted the validity of defendant's argument that, according to *Ward*, the only evidence that can suffice to identify the substance that a defendant is charged with possessing, manufacturing, selling, or delivering as a controlled substance for sufficiency of the evidence purposes is a scientifically valid chemical analysis performed by a person with expertise in interpreting the results produced by such an analysis. The State, on the other hand, argues that the Court of Appeals and defendant have misapprehended the nature of our decision in *Ward* given that it "only involved <u>admissibility</u> not sufficiency." As a result, it is necessary for us to analyze the meaning and reach of our decision in *Ward* to properly decide this case.

The sole issue addressed in *Ward* was "whether the trial court abused its discretion by permitting [an analyst] to give expert opinion testimony identifying certain pills based solely on a visual inspection methodology." 364 N.C. at 139, 694 S.E.2d at 742. In determining that the trial court had abused its discretion by permitting the expert to identify the controlled substance using such a methodology,

---

to decide whether the facts, taken singly or in combination*,* satisfy [it] beyond a reasonable doubt that the defendant is actually guilty" ' " (second alteration in original) (emphasis omitted) (quoting *State v. Thomas*, 296 N.C. 236, 244, 250 S.E.2d 204, 209 (1978))); *State v. McAvoy*, 331 N.C. 583, 589, 417 S.E.2d 489, 493–94 (1992) (stating that, "[i]f there is substantial evidence of each element of the offense charged, or any lesser included offenses, the trial court must deny the motion to dismiss as to those charges supported by substantial evidence and submit them to the jury for its consideration; the weight and credibility of such evidence is a question reserved for the jury" (citing *State v. Vause*, 328 N.C. 231, 236–37, 400 S.E.2d 57, 61 (1991))). Instead, as long as the record contains evidence which tends to show the existence of each element of the charged offense, a defendant's dismissal motion should be denied.

*id.* at 148, 694 S.E.2d at 747–48, the Court relied upon its decision in *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 458, 597 S.E.2d 674, 686 (2004), which "established three steps 'for evaluating the admissibility of expert testimony' " pursuant to N.C.G.S. § 8C-1, Rule 702, with those steps including whether "the expert's proffered method of proof [is] sufficiently reliable as an area for expert testimony," *Ward*, 364 N.C. at 140, 694 S.E.2d at 742 (quoting *Howerton*, 358 N.C. at 458, 597 S.E.2d at 686). In determining that the visual identification evidence at issue in *Ward* should not have been admitted for the jury's consideration, 364 N.C. at 142, 694 S.E.2d at 743, we noted that "[t]he proponent of the expert witness, in this case the State, has 'the burden of tendering the qualifications of the expert' and demonstrating the propriety of the testimony under this three-step approach," *id.* at 140, 694 S.E.2d at 742 (quoting *Crocker v. Roethling*, 363 N.C. 140, 144, 675 S.E.2d 625, 629 (2009) (plurality opinion)). The Court determined that the challenged evidence should not have been admitted on the grounds that "the visual inspection methodology . . . proffered as an area for expert testimony is not sufficiently reliable to identify the substances at issue," *id.* at 142, 694 S.E.2d at 743, given (1) the absence of significant evidence "either implying that identification of controlled substances by mere visual inspection is scientifically reliable or suggesting that [the analyst's] particular methodology was uniquely reliable" and (2) the failure of the State's expert witness to provide "any scientific data or demonstration of the reliability of his methodology," *id.* at 144, 694 S.E.2d at 745. As we noted in stating that "[t]his holding is limited to

North Carolina Rule of Evidence 702," *id.* at 147, 694 S.E.2d at 747, our decision in *Ward* focused solely upon the admissibility of the challenged evidence and did not address the sufficiency of the evidence to support the defendant's convictions in that case.

We recognize that, even though *Ward* did not address the sufficiency of the challenged evidence to establish the identity of the substances at issue in that case, the opinion in *Ward* has been deemed to be relevant to such inquiry in a number of decisions, including the Court of Appeals' decision in this case. *See, e.g., Bridges*, 810 S.E.2d at 366, 367, 370 (holding that the trial court did not err by denying a motion to dismiss a charge of possession of methamphetamine on the grounds that the testimony of a law enforcement officer that the defendant had told the officer that "she had a baggy of meth hidden in her bra" coupled with evidence of the "crystal-like substance found in [d]efendant's bra," taken together, constituted "proof sufficient to establish the presence of the first element" of the possession charge pursuant to *Ward*); *State v. James*, 240 N.C. App. 456, 459, 770 S.E.2d 736, 738–39 (2015) (determining, after noting that the defendant did not make "the sufficiency of the sample size a basis for [his] motion to dismiss," that, had the issue been properly preserved for purposes of appellate review, a chemical analysis of one pill along with visual examination of the remaining pills sufficed to permit a jury "to conclude that defendant possessed and transported 28 grams or more of a Schedule II controlled substance"); *see also State v. Blackwell*, 207 N.C. App. 255, 259, 699 S.E.2d 474, 476–

77 (2010) (noting, in determining whether the admission of a laboratory report constituted plain error, that, "[w]ithout the erroneous admission of the laboratory reports," "the case against defendant would have been subject to dismissal at the close of the State's evidence" given that "the identification of the substance as cocaine was a fundamental part of the State's case" according to *Ward*). The confusion reflected in these decisions concerning the proper manner in which *Ward* should be understood may have arisen from our statement that:

> We acknowledge that controlled substances come in many forms and that we are unable to foresee every possible scenario that may arise during a criminal prosecution. Nevertheless, the burden is on the State to establish the identity of any alleged controlled substance that is the basis of the prosecution. Unless the State establishes before the trial court that another method of identification is sufficient to establish the identity of the controlled substance beyond a reasonable doubt, some form of scientifically valid chemical analysis is required. This holding is limited to North Carolina Rule of Evidence 702.

*Ward*, 364 N.C. at 147, 694 S.E.2d at 747; *see Osborne*, 821 S.E.2d at 270. Although the quoted language has been cited in addressing sufficiency of the evidence issues in a number of cases, including those referenced above, the passage in question explicitly states that the sole issue before the Court in *Ward* involved the issue of admissibility rather than the issue of sufficiency. Thus, for purposes of examining the sufficiency of the evidence to support a criminal conviction, it simply does not matter whether some or all of the evidence contained in the record should not have been admitted; instead, when evaluating the sufficiency of the evidence, all of the

evidence, regardless of its admissibility, must be considered in determining the validity of the conviction in question. *State v. Vestal*, 278 N.C. at 567, 180 S.E.2d at 760 (stating that, "[i]n determining such motion, incompetent evidence which has been admitted must be considered as if it were competent" (first citing *State v. Cutler*, 271 N.C. 379, 382-83, 156 S.E.2d 679, 681 (1967) (stating that "[a]ll of the evidence actually admitted, whether competent or incompetent, including that offered by the defendant, if any, which is favorable to the State, must be taken into account and so considered by the court in ruling upon the motion [for nonsuit in a criminal action]"); and then citing *State v. Virgil*, 263 N.C. 73, 75, 138 S.E.2d 777, 778 (1964) (same)). For that reason, a reviewing court errs to the extent that it determines whether the evidence suffices to support a defendant's criminal conviction by ascertaining whether the evidence relevant to the issue of the defendant's guilt should or should not have been admitted and then evaluating whether the admissible evidence, examined without reference to the allegedly inadmissible evidence that the trial court allowed the jury to hear, sufficed to support the defendant's conviction.

Additional confusion about the relevance of the principles enunciated in *Ward* to sufficiency of the evidence issues may stem from our decision in *Llamas-Hernandez*, 363 N.C. at 8, 673 S.E.2d at 658, in which this Court, in a per curiam opinion, reversed the Court of Appeals' decision "[f]or the reasons stated in the dissenting opinion." According to the dissenting opinion that this Court adopted in *Llamas-Hernandez*, the trial court erred by admitting lay opinion testimony

concerning the identity of the controlled substance in which the defendant allegedly trafficked. After making this determination, the dissenting judge stated that "expert testimony [is] required to establish that a substance is in fact a controlled substance," 189 N.C. App. at 652, 659 S.E.2d at 86 (Steelman, J., concurring, in part, and dissenting, in part), and that, "[w]ithout [the lay opinion] testimony, there was no evidence before the jury as to the nature of the white powder," so that "[t]he trial court erred in denying defendant's motion to dismiss the Class G trafficking offense," *id.* at 654–55, 659 S.E.2d at 88. Aside from the fact that the dissenting judge did not explain in detail why the appropriate remedy for the erroneous admission of the visual identification testimony would be a determination that the evidence did not suffice to support the defendant's conviction rather than a new trial and the fact that the issue actually in dispute between the parties related to admissibility rather than sufficiency, the remedial result reached in *Llamas-Hernandez* is inconsistent with numerous decisions of this Court, such as *Nabors*, *Vestal*, *Cutler*, and *Virgil*.[4] As a

---

[4] To be absolutely clear, the appropriate remedy for prejudicial error resulting from the admission of evidence that should not have been admitted has traditionally been for the defendant to receive a new trial rather than for the charges that had been lodged against that defendant to be dismissed for insufficiency of the evidence. *See, e.g., State v. Craven*, 367 N.C. 51, 58, 744 S.E.2d 458, 462 (2013) (determining that the Court of Appeals, by vacating a conviction on the grounds that evidence had been erroneously admitted and the error was prejudicial, had ordered a remedy that was "erroneous as a matter of law" and that the Court of Appeals should, instead, "have ordered a new trial" (citing *State v. Littlejohn*, 264 N.C. 571, 574, 142 S.E.2d 132, 134–35 (1965))). For that reason, the sole remedy available to a criminal defendant faced with an attempt on the part of the State to elicit evidence identifying a controlled substance that fails to satisfy the principles enunciated in *Ward* is to object to the admission of that evidence and to challenge any decision on the part of the trial court to admit that evidence as part of a bid for a new trial on appeal.

result, to the extent that *Llamas-Hernandez* suggests that the result reached by the Court of Appeals in this case was the correct one, that portion of our decision in *Llamas-Hernandez* is disapproved.

In view of the fact that the absence of an admissible chemical analysis of the substance that defendant allegedly possessed does not necessitate a determination that the record evidence failed to support the jury's decision to convict defendant of possessing heroin, the only thing that remains for us to do in order to decide this case is to determine whether, when analyzed in accordance with the applicable legal standard, the evidence adduced at defendant's trial sufficed to support her conviction. A careful review of the evidence admitted at defendant's trial establishes that defendant told an investigating officer that she had ingested heroin, that several investigating officers identified the substance seized in the defendant's hotel room as heroin, and that the substance that defendant was charged with possessing field-tested positive for heroin on two different occasions. Assuming, without in any way deciding, that some of this evidence might have been subject to exclusion if defendant had objected to its admission, no such objection was lodged. Thus, the record, when considered in its entirety and without regard to whether specific items of evidence found in the record were or were not admissible, contains ample evidence tending to show that the substance that defendant allegedly possessed was heroin.[5] As a result,

---

[5] The Court of Appeals and defendant have both emphasized that in this case, unlike *Nabors*, *Williams*, and *Ortiz-Zape*, the evidence upon which the State relied in arguing that the record contained adequate support for the jury's finding of defendant's guilt did not

the Court of Appeals erred by holding that the trial court erroneously denied defendant's motion to dismiss the heroin possession charge for insufficiency of the evidence.

## III. Conclusion

Thus, for the reasons set forth above, we hold that the Court of Appeals erred by determining that the trial court had erroneously denied defendant's motion to dismiss the possession of heroin charge that had been lodged against her for insufficiency of the evidence. As a result, the Court of Appeals' decision in this case is reversed and this case is remanded to the Court of Appeals for consideration of defendant's remaining challenge to the trial court's judgment.

REVERSED AND REMANDED.

---

consist of either an admission by defendant or testimony elicited by defendant. However, that fact has no bearing upon the proper resolution of the sufficiency of the evidence issue in this case. Although an admission by defendant or one of her witnesses might be given greater weight than other evidence during the course of a jury's deliberations, the source from which a particular item of evidence originates is irrelevant to a proper sufficiency of the evidence determination, which focuses upon whether there is any evidence of any kind tending to support a finding of a defendant's guilt rather than upon the form that the evidence takes. *See, e.g.*, *State v. Lowery*, 309 N.C. 763, 766, 309 S.E.2d 232, 236 (1983) (stating that "[t]he trial court in considering a motion to dismiss is concerned only with the sufficiency of the evidence to carry the case to the jury; it is not concerned with the weight of the evidence" (citing *State v. McNeil*, 280 N.C. 159, 162, 185 S.E.2d 156, 157 (1971))). Similarly, the existence of questions about the reliability of the field test results that the jury was allowed, without objection, to hear in this case goes to the admissibility of that evidence rather than to whether that evidence is relevant in determining whether the evidence sufficed to support defendant's conviction.

Justice EARLS concurring.

I concur with the analysis in the majority opinion, but write separately to note a threshold matter of immunity and jurisdiction which I would have considered *sua sponte*. On 9 April 2013 Governor Pat McCrory signed into law Session Law 2013-23, titled, in part, "An Act to Provide Limited Immunity From Prosecution for (1) Certain Drug-Related Offenses Committed by an Individual Who Seeks Medical Assistance for a Person Experiencing a Drug-Related Overdose and (2) Certain Drug-Related Offenses Committed by an Individual Experiencing a Drug-Related Overdose and In Need of Medical Assistance." 2013 N.C. Sess. Laws 72, 72–73 (codified as amended at N.C.G.S. §§ 90-96.2 & 90-106.2) (2019). Passed with overwhelming majorities in the state House and Senate, *see* https://www.ncleg.gov/BillLookUp/2013/S20, the bill was referred to as the "Good Samaritan Law/Naloxone Access Law" and went into effect immediately. S.L. 2013-23, § 4, 2013 N.C. Sess. Laws at 73.

In Section 1, the law amended Article 5 of Chapter 90 of the General Statutes to add a new section titled "Drug-related overdose treatment; limited immunity." S.L. 2013-23, § 1, 2013 N.C. Sess. Laws at 72. The statute provided that:

> A person who experiences a drug-related overdose and is in need of medical assistance shall not be prosecuted for . . . (iii) a felony violation of G.S. 90-95(a)(3) possession of less than one gram of heroin . . . if the evidence for prosecution under those sections was obtained as a result of the drug-related overdose and need for medical assistance.

*Id.*

This law was in effect on 17 November 2014 when police received a 911 call that there was an overdose at a Days Inn in Archdale. Under the terms of that statute,[6] neither Shelley Osborne nor anyone who, in good faith, was seeking medical assistance for her that day could be prosecuted for possession of less than one gram of heroin. I concur that, to the extent we are only examining the sufficiency of the evidence here, without regard to the question of the admissibility of any of the evidence, all of the evidence contained in the record taken in the light most favorable to the State was sufficient to prove that the substance possessed by Shelley Osborne was heroin. And I concur that the case should be remanded to the Court of Appeals for consideration of defendant's remaining challenge to the trial court's judgment, which was the argument that, "[i]n the alternative, the trial court plainly erred by admitting testimony identifying the substance as heroin, by allowing an officer to conduct a field test in front of the jury, and by admitting testimony that the result of the field test indicated heroin." The Court of Appeals should also address on remand the question of the application of N.C.G.S. § 90-96.2 to this case.

North Carolina's Good Samaritan/Naloxone Access Law was passed at a time when state public health officials had reported a 300 percent increase in the number of overdose deaths in North Carolina in just over a decade, from 297 in 1999 to 1,140

---

[6] N.C.G.S. § 90-96.2 was further amended in 2015; the new version applies to offenses committed on or after 1 August 2015. Act of June 10, 2015, S.L. 2015-94, §§ 1, 4, 2015 N.C. Sess. Laws 191, 191-92, 194.

in 2011.  *See* Injury and Violence Prevention Branch, North Carolina Division of Public Health, *Prescription & Drug Overdoses*, (2013), http://injuryfreenc.ncdhhs.gov/About/PoisoningOverdoseFactSheet2013.pdf.  The General Assembly made the decision that encouraging individuals suffering from an overdose, and those Good Samaritans who might be with them, to seek medical help to save lives was more important than prosecuting those individuals for possession of less than one gram of heroin.[7]

Ultimately, the question I would start with in deciding this case is whether the Good Samaritan/Naloxone Access Law's immunity is waived if not affirmatively asserted, or whether, like subject matter jurisdiction, it can be raised at any time.  *Cf. State v. Sturdivant*, 304 N.C. 293, 307–08, 283 S.E.2d 719, 729–30 (1981) (noting that an argument that the trial court lacked subject matter jurisdiction may be raised at any time after a verdict); *Willowmere Cmty. Ass'n v. City of Charlotte*, 370 N.C. 553, 561, 809 S.E.2d 558, 563–64 (2018) (holding that since standing is a necessary prerequisite to a court's subject matter jurisdiction, it can be challenged at "any stage of the proceedings, even after judgment" (quoting *In re T.R.P.*, 360 N.C. 588, 595, 636

---

[7] The original statute also provided that "[n]othing in this section shall be construed to bar the admissibility of any evidence obtained in connection with the investigation and prosecution of other crimes committed by a person who otherwise qualified for limited immunity under this section."  S.L. 2013-23, § 1 (d), 2013 N.C. Sess. Laws at 72.  In this case, defendant was also convicted of two counts of misdemeanor child abuse based on the fact that her two children under the age of sixteen were in the hotel room at the time she overdosed.  The statute does not provide immunity from prosecution for those offenses and they are not at issue here.

S.E.2d 787, 793 (2006))). The court always has the obligation to inquire into and be certain of its jurisdiction. *See generally Lemmerman v. A.T. Williams Oil Co.*, 318 N.C. 577, 580, 350 S.E.2d 83, 85–86 (1986) ("Every court necessarily has the inherent judicial power to inquire into, hear and determine questions of its own jurisdiction, whether of law or fact, the decision of which is necessary to determine the questions of its jurisdiction." (quoting *Burgess v. Gibbs*, 262 N.C. 462, 465, 137 S.E.2d 806, 808 (1964))); *see also* N.C.G.S. § 1A-1, Rule 12(h)(3) ("Whenever it appears by suggestion of the parties or *otherwise* that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." (emphasis added)); *Catawba Cty. v. Loggins*, 370 N.C. 83, 100, 804 S.E.2d 474, 486 (2017) (Martin, C.J., concurring in the result only) ("Courts always have jurisdiction to determine subject-matter jurisdiction, but they do not always have—in fact, they usually do not have—the power to determine other matters unless asked to do so by a party."). In *Loggins*, the Court explained that where the legislature has established the court's jurisdiction by state statute, subject to certain limitations, the court has no jurisdiction to exceed those limits, stating:

> Jurisdiction is "[t]he legal power and authority of a court to make a decision that binds the parties to any matter properly brought before it." The court must have personal jurisdiction and, relevant here, subject matter jurisdiction "or '[j]urisdiction over the nature of the case and the type of relief sought,' in order to decide a case." "The legislature, within constitutional limitations, can fix and circumscribe the jurisdiction of the courts of this State." "Where jurisdiction is statutory and the Legislature requires the Court to exercise its jurisdiction in a certain manner, to follow a certain procedure, or otherwise subjects the Court

> to certain limitations, an act of the Court beyond these limits is in excess of its jurisdiction."

370 N.C. at 88, 804 S.E.2d at 478 (alterations in original) (first quoting *T.R.P.*, 360 N.C. at 590, 636 S.E.2d at 789–90; then quoting *T.R.P.* at 590, 636 S.E.2d at 790; then quoting *Bullington v. Angel*, 220 N.C. 18, 20, 16 S.E.2d 411, 412 (1941); then quoting *Eudy v. Eudy*, 288 N.C. 71, 75, 215 S.E.2d 782, 785 (1975), *overruled on other grounds by Quick v. Quick*, 305 N.C. 446, 457–58, 290 S.E.2d 653, 661 (1982)).  In an analogous situation, where the issue was whether the court had jurisdiction to prosecute the defendant because of a factual dispute over where the crime occurred, this Court acknowledged that when a defendant challenges the jurisdiction of the court,

> the defendant is contesting the very power of this State to try him.  We are of the view that a question as basic as jurisdiction is not an "independent, distinct, substantive matter of exemption, immunity or defense" and ought not to be regarded as an affirmative defense on which the defendant must bear the burden of proof.  Rather, jurisdiction is a matter which, *when contested*, should be proven by the prosecution as a prerequisite to the authority of the court to enter judgment.

*State v. Batdorf*, 293 N.C. 486, 493, 238 S.E.2d 497, 502 (1977) (quoting *State v. Davis*, 214 N.C. 787, 793, 1 S.E.2d 104, 108 (1939)); *see also State v. Covington*, 267 N.C. 292, 295–96, 148 S.E.2d 138, 141–42 (1966) (holding that where lack of jurisdiction appears on the face of the record, this Court, *ex mero motu*, arrests the judgement).

Thus, it is appropriate for the Court of Appeals on remand to address whether

the Good Samaritan/Naloxone Law is a limit on the court's jurisdiction to prosecute defendant in this case, by directing that a person who experiences a drug-related overdose and is in need of medical assistance "shall not be prosecuted" for possession of less than one gram of cocaine, or, more generally, if not purely jurisdictional, whether it is an issue that can be waived.

Certainly the first place to begin is the language of the statute itself. If unambiguous, "there is no room for judicial construction." *Lee v. Gore*, 365 N.C. 227, 230, 717 S.E.2d 356, 358 (2011) (citing *Walker v. Bd. of Trs. Of N.C. Local Gov'tal Emps.' Ret. Sys.*, 348 N.C. 63, 65–66, 499 S.E.2d 429, 430–31 (1998)); *see also State v. Ellison*, 366 N.C. 439, 443, 738 S.E.2d 161, 164 (2013) (applying opium trafficking statute's clear and unambiguous language that prohibits trafficking in mixtures containing opium derivatives); *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990) (noting that legislative purpose is first determined from the plain words of the statute). The law uses the term "shall not" which is mandatory, not permissive. *State v. Johnson*, 298 N.C. 355, 361, 259 S.E.2d 752, 757 (1979) (citing Black's Law Dictionary 1541 (4th rev. ed. 1968)) ("As used in statutes, the word 'shall' is generally imperative or mandatory."). If a person in defendant's circumstances "shall not" be prosecuted, there is no room for discretion to prosecute them.

It is also instructive that the statute does not say "it shall be a defense to the crime of possession of less than one gram of heroin that . . . ." The legislature is aware

of the various defenses available in criminal law, and, indeed, has passed statutes requiring a defendant to give notice before trial if they intend to assert certain defenses. *See* N.C.G.S. § 15A-905(c); *see also State v. Rankin*, 371 N.C. 885, 893, 821 S.E.2d 787, 794 (2018) ("If the General Assembly wanted to enable a trash collector to be criminally charged for doing his or her job and forced to demonstrate his or her innocence by proving an affirmative defense at trial, it could have indicated as much in the statute."). "It is always presumed that the legislature acted with care and deliberation and with full knowledge of prior and existing law." *State v. Benton*, 276 N.C. 641, 658, 174 S.E.2d 793, 804 (1970) (citations omitted). The fact that the statute at issue in this case is not framed as a defense to a criminal prosecution but rather a grant of immunity is apparent from the plain language of the statute.

The goal of statutory construction is to ensure that the purpose of the legislature is accomplished. *State ex rel. Hunt v. N.C. Reinsurance Facil.*, 302 N.C. 274, 288, 275 S.E.2d 399, 405 (1981) (citing *In re Dillingham*, 257 N.C. 684, 694, 127 S.E.2d 584, 591 (1962)). This Court has observed that "[c]ourts also ascertain legislative intent from the policy objectives behind a statute's passage 'and the consequences which would follow from a construction one way or another.' " *Elec. Supply Co. of Durham v. Swain Elec. Co.*, 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991) (quoting *Campbell v. Church*, 298 N.C. 476, 484, 259 S.E.2d 558, 564 (1979)). The legislature's intent in passing N.C.G.S. § 90-96.2 was to ensure that victims of drug overdoses, and those who may be with them or come across them, do not refrain

from seeking medical attention out of fear of criminal prosecution. In light of the opioid overdose epidemic in this state, the legislature enacted a policy to sacrifice prosecutions for possession of small amounts of drugs in order to save lives. Treating section N.C.G.S. 90-96.2(c) as anything other than a jurisdictional requirement that must be established by the State would severely undercut that policy.

As a Pennsylvania intermediate appellate court addressing that state's version of an overdose immunity statute noted:

> Moreover, the Legislature intended for prosecutors and police to refrain from filing charges when sorting through the aftermath of the unfortunately all-too-common overdose. The statute discourages the authorities from commencing the criminal justice process, *i.e.* by placing a limitation upon the charging power, to provide more incentive for reporters to call. . . . It would significantly undercut the statute's goal to conclude, as the Commonwealth urges, that the Act merely provides a defense, thereby requiring an overdose victim or a reporter to litigate the issue of immunity. We find that the statute clearly contemplates that a large number of these cases will never reach the courtroom halls; hence, the prohibition against **charging** a person.

*Commonwealth v. Markun*, 185 A.3d 1026, 1035–36 (Pa. Super. Ct. 2018). Pennsylvania's statute contains conspicuous differences from the original N.C.G.S. § 90-96.2 and explicitly places a burden on the defendant to establish certain criteria in order to receive its particular protections, nevertheless the Pennsylvania court concluded that the statute confers immunity, similar to sovereign immunity, that is not waived if raised for the first time on appeal, and creates a duty of the prosecution not to bring charges if the Act applies to the defendant's circumstances. *Id.* at 1031–

40. The application of this immunity in North Carolina's Good Samaritan/Naloxone Access law is not something that was tacitly waived by defendant here, but rather the State was required to prove that the immunity did not apply in order to proceed with prosecution for this particular offense.

Beyond the question of whether the limited immunity conferred by this statute is intended to be immunity from prosecution or a defense to a prosecution, there further remains the question of whether the law actually applies to Ms. Osborne. There is no dispute in the record that law enforcement personnel were called to provide aid to an overdose victim. Arriving first, Officer Flinchem found defendant unconscious, unresponsive, and turning blue, apparently from a heroin overdose. After Officer Flinchem insured that it was safe for EMS to enter, EMS entered the room and was able to revive defendant, who confirmed that she had ingested heroin. Officer Flinchem and two other officers who also responded to the call found drug paraphernalia and a "little piece of heroin."

The evidence for prosecution was obtained as a result of the need for medical assistance. Defendant was indicted, tried and convicted of a felony violation of N.C.G.S. § 90-95(a)(3), one of the statutes referenced in the Good Samaritan/Naloxone Access Law. What arguably is unclear is whether the amount of heroin at issue was less than one gram, as the only evidence in the record concerning the amount is that it was a "little piece of heroin." Given the language and intent behind N.C.G.S. § 90-96.2(c), the State in these circumstances bears the

burden of establishing that the amount was one gram or more. Although the weight of the substance is not an element of the offense of possession, the immunity statute means that the weight of the substance needs to be known where all the other elements of immunity are present. That is the only way to effectuate the intent of the legislature that people who call police or medical personnel for treatment because they are experiencing a drug-related overdose shall not be prosecuted for possessing less than one gram of the drug.