STATE OF NORTH CAROLINA v. SAMMIE LEE CAMP

No. 83

(Filed 5 March 1980)

**Criminal Law § 143.1— probation—revocation hearing—timeliness—defendant not chargeable with delay**

　　Where defendant was convicted of bastardy and placed on probation for five years commencing 1 November 1973, the trial judge was without authority to conduct a probation revocation hearing and activate the suspended sentence on 7 December 1978 after the period of probation and suspension had expired, since failure of the court to enter a revocation judgment within the five year period prescribed by the original judgment was not chargeable to the conduct of defendant who never absconded, never concealed himself to delay or avoid a revocation hearing, and was never charged with the commission of another crime during the probationary period which might toll the running of the probationary period. G.S. 15A-1344(f).

DEFENDANT appeals from judgment of *Friday, J.*, 4 December 1978 Session, GASTON Superior Court. This case was argued as Case No. 53 at the Fall Term 1979.

In a warrant dated 23 July 1973, defendant was charged with willfully failing to provide adequate support for his minor illegitimate child, Timothy Hames, born to Mary Louise Hames on 12 July 1973.

Defendant was convicted in the District Court and appealed to the Superior Court for a trial de novo. At the trial in Superior Court before Judge Friday and a jury at the 29 October 1973 Session of Gaston Superior Court, Mary Louise Hames was the only witness for the State. She testified that she was the mother of Timothy Hames, who was born on 12 July 1973; that she became pregnant in October 1972, and during that month she had sexual intercourse with defendant two or three times a week and did not have intercourse with any other man; that after the child was born, she asked defendant to support it, and he refused to do so, denying that he was the child's father.

Dr. Eugene Dell Rutland, Jr., a physician, was the only witness for defendant. He testified that he had tested the blood of Mary Louise Hames, Timothy Hames, and defendant; that the blood test revealed that both Miss Hames and defendant were of blood group O while the child was of blood group A; that under

the laws of heredity two parents of group O cannot have a child of group A.

The jury found defendant guilty and he was sentenced to six months imprisonment suspended for five years on probation on condition that he pay $15 per week for support of the child plus court costs and certain expenses. Defendant appealed and the Court of Appeals ordered a new trial. In a scholarly opinion by Judge Baley, with Judge Parker and Chief Judge Brock concurring, the Court of Appeals held that the trial court should have taken judicial notice of the principles of heredity upon which blood tests and paternity are based and should have instructed the jury that two parents of blood group O cannot have a child of blood group A. See *State v. Camp*, 22 N.C. App. 109, 205 S.E. 2d 800 (1974).

We allowed the State's petition for discretionary review and reversed in a split decision, the majority holding that under G.S. 49-7 and G.S. 8-50.1 the blood tests are not conclusive on the issue of paternity but simply constitute evidence to be considered by the jury with other evidence in the case. See *State v. Camp*, 286 N.C. 148, 209 S.E. 2d 754 (1974).

Defendant apparently made only two payments of $15 each and thereafter refused to make any further payments on the ground that he was not the father of the child. After many citations for failure to comply with the judgment, he was brought before Judge Friday, who conducted a revocation of probation hearing on 7 December 1978 and found as a fact that defendant had willfully failed to comply with the judgment. Judge Friday thereupon concluded that defendant had breached a valid condition upon which the prison sentence was suspended and ordered the sentence into effect. Defendant appealed to the Court of Appeals and the Supreme Court, *ex mero motu*, transferred the case to this Court for initial appellate review. Errors assigned will be discussed in the opinion.

*Rufus L. Edmisten, Attorney General, by William F. Briley, Assistant Attorney General, for the State.*

*Jesse B. Caldwell III, Assistant Public Defender, for defendant appellant.*

HUSKINS, Justice.

Defendant was convicted of bastardy and placed on probation for five years commencing 1 November 1973. Probation was revoked and the six months suspended sentence placed into effect on 7 December 1978. Defendant contends the five-year period of suspension and probation had expired and Judge Friday therefore had no jurisdiction to revoke the probation and activate the sentence. This constitutes defendant's first assignment of error.

G.S. 15A-1342(a) provides in pertinent part: "The court may place an offender on probation for a maximum of five years."

G.S. 15A-1344(d) (Supp. 1979) provides in pertinent part: "If a defendant violates a condition of probation at any time prior to the expiration or termination of the period of probation, the court, in accordance with the provisions in G.S. 15A-1345, . . . may revoke the probation and activate the suspended sentence imposed at the time of initial sentencing; . . . ."

G.S. 15A-1344(f) reads as follows:

"(f) Revocation after Period of Probation.—The court may revoke probation after the expiration of the period of probation if:

(1) Before the expiration of the period of probation the State has filed a written motion with the clerk indicating its intent to conduct a revocation hearing; and

(2) The court finds that the State has made reasonable effort to notify the probationer and to conduct the hearing earlier."

According to the Official Commentary subsection (f) provides that "probation can be revoked and the probationer made to serve a period of active imprisonment even after the period of probation has expired if a violation occurred during the period *and if the court was unable to bring the petitioner before it in order to revoke at that time.*" (Emphasis added.)

The foregoing statutes are a codification of a portion of Section 1 of Chapter 711 of the 1977 Session Laws. Section 39 of that Chapter reads in pertinent part as follows: "This act shall become

effective July 1, 1978 and applies to all matters addressed by its provisions without regard to when a defendant's guilt was established or when judgment was entered against him, . . . ." Hence these statutes are applicable to this case. *See*, Editor's Note to G.S. 15A-1341.

When a sentence has been suspended and defendant placed on probation on certain named conditions, the court may, *at any time during the period of probation*, require defendant to appear before it, inquire into alleged violations of the conditions, and, if found to be true, place the suspended sentence into effect. G.S. 15A-1344(d) (Supp. 1979). *Accord, State v. Pelley*, 221 N.C. 487, 20 S.E. 2d 850 (1942); *State v. Shepherd*, 187 N.C. 609, 122 S.E. 467 (1924). But the State may not do so *after the expiration of the period of probation* except as provided in G.S. 15A-1344(f). *Accord, State v. Pelley, supra; State v. Gooding*, 194 N.C. 271, 139 S.E. 436 (1927).

Although the record before us contains only two notices to defendant, one dated 14 September 1976 and the other dated 3 March 1978, to report to the court for a probation revocation hearing based upon his failure to make the payments required by the probation judgment, the record recites that defendant was so notified and actually appeared in Superior Court for a revocation hearing "some 23 times." Yet the hearing was always continued and a revocation hearing was never conducted until Judge Friday finally heard evidence, made findings, revoked defendant's probation and activated the six-months suspended sentence on 7 December 1978. The reason the revocation hearing was continued time after time after time appears from the testimony of the public defender who represented defendant: "No trial court I discussed the matter with expressed any desire to hear the matter. Usually what would happen, the Courts would just say they didn't want to send—just didn't want to hear it, they didn't want to send the man off because they didn't think he was guilty and they just didn't want to hear it. So it would be continued over to the next term."

Defendant's probation officer testifed that defendant had always been cooperative, always appeared in court when notified to do so, "followed everything I have asked him" except make the payments required by the judgment. The probation officer further

State v. Camp

testified that defendant always contended he was not the father of the child and, for that reason alone, refused to make the payments.

Applying the provisions of G.S. 15A-1344(f) to the foregoing recitals, we hold that Judge Friday was without authority to conduct a probation revocation hearing and activate the suspended sentences after the period of probation and suspension had expired. This is true because the failure of the court to enter a revocation judgment within the five-year period prescribed by the original judgment is not chargeable to the conduct of defendant. He never absconded. He never concealed himself to delay or avoid a revocation hearing. He was never charged with the commission of another crime during the probationary period which might toll the running of the probationary period. Compare, G.S. 15A-1344(d) (Supp. 1979); *State v. Pelley*, supra. Moreover, Judge Friday did not find, as indeed he could not, that the State had "made reasonable effort . . . to conduct the hearing earlier." G.S. 15A-1344(f)(2). Consequently, jurisdiction was lost by the lapse of time and the court had no power to enter a revocation judgment on 7 December 1978. The judgment is therefore void.

The hesitancy of the trial judges to conduct a timely hearing and revoke this defendant's probation is quite understandable since, according to Mendel's Law of Hereditary Characteristics, two parents with type O blood cannot produce a child with type A blood. There is no suggestion in this record that the blood tests were not properly administered or that Dr. Rutland failed to report the test results truthfully.

In light of the conclusion we have reached, other assignments of error need not be passed upon.

For the reasons stated, the judgment appealed from is arrested and defendant discharged.

Judgment arrested.