IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-769, 19-770

Filed: 19 May 2020

Yancey County, No. 16 CRS 50463-64, 17 CRS 50260, 18 CRS 000131-32

STATE OF NORTH CAROLINA

v.

SCOTT EDWARD SASEK, Defendant.

Appeal by Defendant from judgments entered 22 March 2019 by Judge Gary M. Gavenus in Yancey County Superior Court. Heard in the Court of Appeals 31 March 2020.

*Attorney General Joshua H. Stein, by Assistant Attorneys General Allison A. Angell and Barry H. Bloch, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Hannah H. Love, for Defendant.*

INMAN, Judge.

Scott Edward Sasek ("Defendant") appeals from the trial court's judgments convicting him of possession with intent to sell or deliver a schedule II controlled substance and sale of methamphetamine, and subsequently revoking his probation. Defendant contends that the trial court committed plain error by admitting expert testimony without first ensuring that it was achieved by reliable principles and methods. Defendant further contends that there was no justifiable reason for the trial court's delay in holding his probation revocation hearing. After careful review,

we find no plain error in Defendant's convictions, but vacate the trial court's judgments revoking Defendant's probation.

## I. Factual and Procedural Background

In July 2016, prior to the events of this case, Defendant pleaded guilty to charges of obtaining property by false pretenses. The court sentenced Defendant to 8 to 19 months imprisonment, suspended upon completion of 18 months of supervised probation to expire in January 2018.

On 15 February 2017, a confidential informant for the Yancey and Mitchell County Sheriff's Offices ("YMCSO") allegedly purchased methamphetamine from Defendant outside of a department store in Yancey County.

### A. *The Controlled Buy*

The YMCSO had previously worked with the informant "25 or 50 times" since January 2017. On February 15, the informant informed an officer with YMCSO that he had a lead to buy methamphetamine from Defendant. The informant and the officer arranged for a controlled buy to occur later that day in a department store parking lot.

The informant met with Defendant in the parking lot and conducted the purchase with money provided by the YMCSO. After completing the transaction, the informant met with an officer and handed him a clear plastic baggie containing a

clear crystal substance "that [he] got from [Defendant]." The officer searched the informant and discovered that he no longer had the money provided for the buy.

Probation violation reports were filed against Defendant on 17 May 2017 and 3 January 2018, each alleging that Defendant violated the terms of his probation by failing to "[c]ommit no criminal offense in any jurisdiction." Defendant was later indicted on 27 November 2017 and 29 May 2018 with a number of crimes related to the controlled buy of methamphetamine.

## B. *Expert Testimony at Trial*

Defendant's charges came on for trial on 18 March 2019. At trial, Ms. Deborah Chancey of the North Carolina State Crime Lab presented testimony about her examination of the contents of the plastic baggie the informant received from Defendant. Chancey was admitted as an expert in drug chemistry without objection following a series of questions regarding her nearly ten years of experience as a Crime Lab employee. Chancey explained that the general procedure for testing unknown substances involves a series of preliminary tests to "indicate the class of drug that may be present," followed by confirmatory testing. Consistent results across multiple tests indicate the type of substance in the sample.

Chancey testified that, for this case, she was asked to test a plastic baggie containing 2.69 grams of a crystalline substance for the presence of a controlled substance. Chancey first conducted a preliminary color test, which produced

"inconclusive" results. Chancey then performed an infrared test, which indicated the substance was primarily a diluent, "not a controlled substance." Next, Chancey performed a "gas chromatography mass spectrometer" test (the "GCMS test") on the substance. In a GCMS test, Chancey explained, the molecules in a substance are separated, timed as they pass through a gas column, and then bombarded into fragments by electrons. The examiner then performs a "visual comparison, a peak-to-peak analysis" of the sample's fragmentation patterns produced by the GCMS test versus a known standard pattern for a controlled substance.

Chancey then began to explain how she applied the GCMS testing methods on the sample in this case, and the result she obtained, but the State interrupted her testimony to inquire about the recognition of GCMS testing in the scientific community. Chancey testified that GCMS testing was well-respected in the scientific community and confirmed that she had recorded the results of her testing in this case in a lab report. The lab report was then admitted into evidence without objection. Following the admission of her lab report, Chancey testified without objection that it was her opinion that the substance the informant received from Defendant "was material containing methamphetamine, Schedule II."

At the close of the State's evidence, Defendant moved to dismiss all charges for insufficient evidence, and the trial court denied Defendant's motions. Defendant did not put on evidence.

C. *Verdicts and Sentencing*

The jury convicted Defendant of possession of methamphetamine, possession with intent to sell or deliver a schedule II controlled substance, sale of methamphetamine, and delivery of methamphetamine. Defendant then pleaded guilty to having attained habitual felon status.

Prior to sentencing, Defendant admitted that he failed to "[c]ommit no criminal offense" in violation of his probation, as alleged in the 17 May 2017 violation report. The trial court then found that Defendant had violated his probation based solely on the methamphetamine-related violation alleged in the 17 May 2017 violation report.

As part of Defendant's habitual felon plea, the parties agreed that any sentences activated as a result of Defendant's revocation of probation would run concurrently with sentences imposed by the jury's verdicts. The trial court sentenced Defendant to 84 to 113 months imprisonment for possession with intent to sell or deliver a schedule II controlled substance; 96 to 131 months imprisonment for sale of methamphetamine, to run consecutively; and reactivated the suspended sentence of 8 to 19 months imprisonment for violation of probation, to run concurrently. The court arrested judgment on Defendant's remaining convictions. Defendant gave notice of appeal in open court.

II. Analysis

Defendant presents two arguments arising from the 18 March 2019 trial: (1) the trial court erred by allowing Chancey to present her expert opinion without proper foundation; and (2) there was no justifiable reason for the trial court's delay in holding Defendant's probation revocation hearing after his probation expired. We address each issue in turn.

## A. *Admission of Expert Testimony*

Defendant challenges the trial court's admission of Chancey's expert opinion that the baggie the informant received from Defendant contained methamphetamine, a schedule II controlled substance. However, Defendant made no objections at trial during any stage of Chancey's testimony. Trial judges have a special obligation to ensure that expert testimony "is not only relevant, but reliable[,]" but "an unpreserved challenge to the performance of a trial court's gatekeeping function in admitting opinion testimony in a criminal trial is subject to plain error review in North Carolina state courts." *State v. Hunt*, 250 N.C. App. 238, 245–46, 792 S.E.2d 552, 558–59 (2016). Plain error review requires a showing by the defendant that a "fundamental error occurred at trial" which "had a probable impact on the jury's finding that the defendant was guilty." *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citations and quotation marks omitted).

Proof that the substance at issue is a controlled substance is a requisite element for the crimes of possession with intent to sell or deliver a schedule II

substance and sale of methamphetamine. *See State v. Bridges*, 257 N.C. App. 732, 733, 810 S.E.2d 365, 367, review denied, 371 N.C. 339, 813 S.E.2d 856 (2018); N.C. Gen. Stat. § 90-95(a)(1) (2017). Methamphetamine is a schedule II controlled substance in North Carolina. N.C. Gen. Stat. § 90-90(3)(c) (2017). "[T]he burden is on the State to establish the identity of any alleged controlled substance that is the basis of the prosecution." *State v. Ward*, 364 N.C. 133, 147, 694 S.E.2d 738, 747 (2010). Expert witness testimony describing "some form of scientifically valid chemical analysis" is ordinarily necessary to identify a controlled substance, unless the State can show beyond a reasonable doubt that some other method of identification is sufficient. *Id.*[1]

Rule 702 of the North Carolina Rules of Evidence states that "if scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue," the testimony of an expert witness as to his or her opinion is admissible if the following can be shown:

> (1) The testimony is based upon sufficient facts or data.
>
> (2) The testimony is the product of reliable principles and methods.

---

[1] Contrary to Defendant's assertion that "[c]ontrolled substances can only be identified through the use of chemical analysis[,]" our Supreme Court has held that "the absence of an admissible chemical analysis of the substance that defendant allegedly possessed does not necessitate a determination that the record evidence failed to support the jury's decision to convict defendant of possessing [a controlled substance]." *State v. Osborne*, 372 N.C. 619, 631, 831 S.E.2d 328, 336 (2019).

> (3) The witness has applied the principles and methods reliably to the facts of the case.

N.C. Gen. Stat. § 8C-1, Rule 702(a) (2017). Application of this "three-pronged reliability test" is a preliminary question to be determined at the discretion of the trial court, reversible only upon a showing that the court abused its discretion. *State v. McGrady*, 368 N.C. 880, 892–893, 787 S.E.2d 1, 10–11 (2016). Where the State seeks to prove the identity of a controlled substance via expert testimony, such testimony is admissible only when it is "based on a scientifically valid chemical analysis and not mere visual inspection." *Ward*, 364 N.C. at 142, 694 S.E.2d at 744.

Defendant contends that "[t]he trial court abused its discretion when it admitted Chancey's testimony and lab report identifying the substance in question as methamphetamine because there was an insufficient foundation for this opinion under Rule 702." Specifically, Defendant argues that Chancey's testimony was admitted without proof that she reliably applied the scientific principles and methods of GCMS testing to the facts of this case. Defendant further reasons that this error was prejudicial because, without the expert's testimony, the State failed to produce evidence that the substance the informant received from Defendant was a controlled substance.

Defendant proposes that the present case is analogous to our Court's decision in *State v. McPhaul*, 256 N.C. App. 303, 808 S.E.2d 294 (2017). In *McPhaul*, an expert fingerprint examiner testified to her opinion that the defendant's fingerprints

matched fingerprint impressions found on material evidence in his murder trial. *Id.* at 313–16, 808 S.E.2d at 303–05. The examiner began her testimony by explaining that each person's fingerprints contain distinguishing characteristics known as "minutia" points that can be used to identify the owner of the fingerprints. *Id.* at 314, 808 S.E.2d at 304. She described the method she generally used to identify fingerprints. *Id.* She then confirmed that procedure was the "same examination technique as is commonly used in the field of latent print identification[,]" and even that "she employed this procedure while conducting her examination in [the] case." *Id.* at 315, 808 S.E.2d at 304. But, when asked how she arrived at her opinion that the fingerprint sample she tested matched the defendant's fingerprints, the examiner testified simply that the described procedure, her training, and her experience led her to that conclusion without explaining how she applied that procedure in the defendant's case. *Id.* at 315–16, 808 S.E.2d at 304–05. "Without further explanation for her conclusions, [the examiner] implicitly asked the jury to accept her expert opinion that the prints matched." *Id.* at 316, 808 S.E.2d at 305. This Court held that the examiner "failed to demonstrate that she 'applied the principles and methods reliably to the facts of the case,' as required by Rule 702(a)(3)," and held that "the trial court abused its discretion by admitting this testimony." *Id.*

The expert testimony in this case is materially indistinguishable from that in *McPhaul*. At trial, Chancey explained the scientific details of color testing and

9

infrared testing, then explained how she applied the tests to the substance and the results she obtained. Chancey then explained the scientific procedure for GCMS testing and confirmed that it was a reliable and a well-respected process but was cut off before she could explain how she applied GCMS testing in the present case. Rather, Chancey's lab report recording her GCMS testing procedures and results was admitted into evidence and published to the jury.

We note that Chancey appeared fully prepared to explain how she applied GCMS testing in this case but was never given the opportunity. Chancey's report, which was admitted in evidence in lieu of further testimony concerning her application of GCMS testing in this case, states only that the "[p]lastic bag containing crystalline material" was "[e]xamine[d] for controlled substances" and found to contain methamphetamine. Like the examiner in *McPhaul*, Chancey "provided no such detail in testifying how she arrived at her actual conclusions *in this* case[,]" and her testimony instead "implicitly asked the jury to accept her expert opinion." *McPhaul,* 256 N.C. App. at 316, 808 S.E.2d at 305 (emphasis in original). We therefore hold that the trial court erred by admitting Chancey's expert opinion testimony without first requiring that she explain how she applied GCMS testing in this case.

Nonetheless, Defendant has not met the high threshold to establish plain error. Our Court has previously held a criminal defendant failed to establish plain

10

error when an expert testified that a chemical analysis was performed, but the evidence "lack[ed] any discussion of that analysis." *State v. Piland*, ___ N.C. App. ___, ___, 822 S.E.2d 876, 888 (2018). In *Piland*, the defendant was discovered in possession of a pill bottle containing a large quantity of white tablets. *Id.* at ___, 822 S.E.2d at 881 (2018). A drug examiner testified that she "performed a chemical analysis on a single tablet to confirm that they did in fact contain what the manufacturer had reported" and concluded that the tablets were indeed hydrocodone, but did not elaborate further as to how she conducted her analysis. *Id.* at ___, 822 S.E.2d at 888. The *Piland* Court held that, though "it was error for the trial court not to properly exercise its gatekeeping function of requiring the expert to testify to the methodology of her chemical analysis[,]" the expert's results were not clearly "baseless speculation" and "her testimony was not so prejudicial that justice could not have been done." *Id.*

We reach the same conclusion here. Chancey testified that she conducted the GCMS test in this case, obtained positive results identifying the substance the informant received from Defendant to be methamphetamine, and produced a lab report recording the results of her analysis. We hold, as we did in *Piland*, that the trial court's error "does not amount to plain error because the expert testified that she performed a 'chemical analysis' and as to the results of that chemical analysis." *Id.*

11

## B. *Revocation of Probation*

Defendant argues, and the State concedes, that the trial court erred by activating his suspended sentence without making a finding that good cause existed to revoke his probation after the period of probation expired. N.C. Gen. Stat. § 15A-1344(f)(3) (2017) ("The court may . . . revoke probation after the expiration of the period of probation if all of the following apply: . . . (3) The court finds for good cause shown and stated that the probation should be . . . revoked."); *State v. Morgan*, 372 N.C. 609, 616, 831 S.E.2d 254, 259 (2019) ("We conclude that both the plain language of N.C.G.S. § 15A-1344(f)(3) and our prior decisions . . . compel the conclusion that the trial court erred by activating defendant's sentences without first making such a finding."). Defendant's probation expired in January 2018. The trial court activated Defendant's suspended sentence in March 2019, fourteen months later. Our review of the trial court's judgments confirms that the court made no findings that good cause existed for this delay.

Defendant contends that the trial court's error requires this Court to vacate his probation revocation without remand to the trial court because "the record is devoid of any evidence that could support a finding on remand that good cause exists to revoke [Defendant's] probation despite the expiration of his probationary period." We agree.

12

Ordinarily, when the trial court fails to make a material finding of fact, the case must be remanded so that proper findings can be made. *State v. Bryant*, 361 N.C. 100, 104, 637 S.E.2d 532, 535 (2006). However, when the trial court fails to make a finding of good cause under N.C. Gen. Stat. § 15A-1344(f)(3), we may only remand where "the record contain[s] sufficient evidence to permit the necessary finding of 'reasonable efforts' by the State to have conducted the probation revocation hearing earlier." *Morgan*, 372 N.C. at 618, 831 S.E.2d at 260 (citing *Bryant*, 361 N.C. at 104, 637 S.E.2d at 535–536). Our Courts have vacated without remand when the record on appeal did not show that the State made reasonable efforts to conduct an earlier probation hearing and the defendant's probation was revoked as little as thirty-six days after its expiration. *State v. Camp*, 299 N.C. 524, 528, 263 S.E.2d 592, 595 (1980).

Here, a probation hearing on Defendant's 17 May 2017 violation report was initially scheduled for 13 June 2017, and the record does not indicate why the hearing did not take place until March 2019, fourteen months after his probation expired. The State contends that "[i]t is reasonable to infer from the record that Defendant wished to proceed on the underlying possession of methamphetamine charge first, before proceeding on his probation violations[.]" However, nothing in the record indicates this was Defendant's intention, and a criminal conviction is not required for the trial court to revoke probation for a defendant's commission of a criminal act in

violation of probation. "All that is required in revoking a suspended sentence is evidence which reasonably satisfies the judge in the use of his sound discretion that a condition of probation has been willfully violated." *State v. Monroe*, 83 N.C. App. 143, 145, 349 S.E.2d 315, 317 (1986); *see also State v. Debnam*, 23 N.C. App. 478, 480, 209 S.E.2d 409, 410 (1974) (holding that the trial court may revoke probation based upon its own independent review of the facts surrounding an alleged crime even if a formal trial on the matter did not result in a guilty judgment). The record does not show why Defendant's probation hearing was not held in June 2017, or, in any event, at some time prior to the expiration of Defendant's probation in January 2018. Therefore, we vacate the trial court's judgments revoking Defendant's probation without remand. *Bryant*, 361 N.C. at 101, 637 S.E.2d at 534 (vacating without remand judgment revoking the defendant's probation after its expiration because the trial court made no finding that good cause existed, the court failed to hold the probation hearing on an earlier scheduled date, and "the record fail[ed] to disclose any specific reason for this failure").

## III. Conclusion

We hold that the trial court did not commit plain error by allowing Chancey to offer her expert opinion that the substance the informant received from Defendant was methamphetamine. We hold that the trial court erred by not making the required finding that good cause existed to revoke Defendant's probation after his

probation period had expired. Because the record contains no evidence that the State made reasonable efforts to conduct the revocation hearing at a sooner date, we vacate the trial court's judgments revoking Defendant's probation.

NO PLAIN ERROR IN PART, VACATED IN PART.

Chief Judge McGEE concurs.

Judge BERGER concurs by separate opinion.

BERGER, Judge, concurring in separate opinion.

I concur in result only as to both issues.

Specifically, to the issue of Defendant's probation violation, I disagree with the majority that the record contains "no evidence" of reasonable efforts. Admittedly, the record does not contain court calendars, motions to continue, or orders for arrest that would aid this Court's review. Also, there is no notice of hearing or other evidence in the record that Defendant sought an earlier hearing on the probation violations.

However, there is some evidence in the record of reasonable efforts such that remand for additional findings would be appropriate. *See State v. Morgan*, 372 N.C. 609, 618, 831 S.E.2d 254, 260 (2019) (remanding for additional findings appropriate where some "evidence exists that would allow the trial court on remand to make a finding of 'good cause shown and stated'[.]")

Here, Defendant was served with probation violations on April 10, 2017. Defendant was alleged to have violated the terms and conditions of his probation by committing the criminal offense of possession of methamphetamine in Yancey County on February 15, 2017. Defendant was charged with possession of methamphetamine on May 15, 2017, in Yancey County File Number 17 CR 50260. On November 27, 2017, Defendant was indicted for attaining habitual felon status and multiple drug charges, including possession of methamphetamine, in Yancey County File Number 17 CRS 50260.

*BERGER, J., concurring in separate opinion*

The record indicates that Defendant was initially appointed an attorney, but subsequently retained private counsel. Defendant's counsel made a general appearance on the criminal charges and probation violation on or about June 26, 2018, although the Notice of General Appearance in the record contains no file stamp. Defendant waived appointed counsel on July 9, 2018.

Defendant's criminal matters, including 17 CRS 50260, came on for trial in March 2019. Following his conviction of the underlying drug offenses, including 17 CRS 50260, Defendant pleaded guilty to attaining habitual felon status. The State and Defendant announced to the trial court at sentencing that the two sides had an agreement concerning Defendant's probation violations. The agreement was that the sentences for Defendant's probation violations would run concurrently with the habitual felon sentence. This agreement between the State and Defendant is some evidence of good cause, and thus, is sufficient to remand to the trial court for additional findings of fact.