IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA19-769, 19-770

 Filed: 19 May 2020

Yancey County, No. 16 CRS 50463-64, 17 CRS 50260, 18 CRS 000131-32

STATE OF NORTH CAROLINA

 v.

SCOTT EDWARD SASEK, Defendant.

 Appeal by Defendant from judgments entered 22 March 2019 by Judge Gary

M. Gavenus in Yancey County Superior Court. Heard in the Court of Appeals 31

March 2020.

 Attorney General Joshua H. Stein, by Assistant Attorneys General Allison A.
 Angell and Barry H. Bloch, for the State.

 Appellate Defender Glenn Gerding, by Assistant Appellate Defender Hannah H.
 Love, for Defendant.

 INMAN, Judge.

 Scott Edward Sasek (“Defendant”) appeals from the trial court’s judgments

convicting him of possession with intent to sell or deliver a schedule II controlled

substance and sale of methamphetamine, and subsequently revoking his probation.

Defendant contends that the trial court committed plain error by admitting expert

testimony without first ensuring that it was achieved by reliable principles and

methods. Defendant further contends that there was no justifiable reason for the

trial court’s delay in holding his probation revocation hearing. After careful review,
 STATE V. SASEK

 Opinion of the Court

we find no plain error in Defendant’s convictions, but vacate the trial court’s

judgments revoking Defendant’s probation.

 I. Factual and Procedural Background

 In July 2016, prior to the events of this case, Defendant pleaded guilty to

charges of obtaining property by false pretenses. The court sentenced Defendant to

8 to 19 months imprisonment, suspended upon completion of 18 months of supervised

probation to expire in January 2018.

 On 15 February 2017, a confidential informant for the Yancey and Mitchell

County Sheriff’s Offices (“YMCSO”) allegedly purchased methamphetamine from

Defendant outside of a department store in Yancey County.

 A. The Controlled Buy

 The YMCSO had previously worked with the informant “25 or 50 times” since

January 2017. On February 15, the informant informed an officer with YMCSO that

he had a lead to buy methamphetamine from Defendant. The informant and the

officer arranged for a controlled buy to occur later that day in a department store

parking lot.

 The informant met with Defendant in the parking lot and conducted the

purchase with money provided by the YMCSO. After completing the transaction, the

informant met with an officer and handed him a clear plastic baggie containing a

 2
 STATE V. SASEK

 Opinion of the Court

clear crystal substance “that [he] got from [Defendant].” The officer searched the

informant and discovered that he no longer had the money provided for the buy.

 Probation violation reports were filed against Defendant on 17 May 2017 and

3 January 2018, each alleging that Defendant violated the terms of his probation by

failing to “[c]ommit no criminal offense in any jurisdiction.” Defendant was later

indicted on 27 November 2017 and 29 May 2018 with a number of crimes related to

the controlled buy of methamphetamine.

 B. Expert Testimony at Trial

 Defendant’s charges came on for trial on 18 March 2019. At trial, Ms. Deborah

Chancey of the North Carolina State Crime Lab presented testimony about her

examination of the contents of the plastic baggie the informant received from

Defendant. Chancey was admitted as an expert in drug chemistry without objection

following a series of questions regarding her nearly ten years of experience as a Crime

Lab employee. Chancey explained that the general procedure for testing unknown

substances involves a series of preliminary tests to “indicate the class of drug that

may be present,” followed by confirmatory testing. Consistent results across multiple

tests indicate the type of substance in the sample.

 Chancey testified that, for this case, she was asked to test a plastic baggie

containing 2.69 grams of a crystalline substance for the presence of a controlled

substance. Chancey first conducted a preliminary color test, which produced

 3
 STATE V. SASEK

 Opinion of the Court

“inconclusive” results. Chancey then performed an infrared test, which indicated the

substance was primarily a diluent, “not a controlled substance.” Next, Chancey

performed a “gas chromatography mass spectrometer” test (the “GCMS test”) on the

substance. In a GCMS test, Chancey explained, the molecules in a substance are

separated, timed as they pass through a gas column, and then bombarded into

fragments by electrons. The examiner then performs a “visual comparison, a peak-

to-peak analysis” of the sample’s fragmentation patterns produced by the GCMS test

versus a known standard pattern for a controlled substance.

 Chancey then began to explain how she applied the GCMS testing methods on

the sample in this case, and the result she obtained, but the State interrupted her

testimony to inquire about the recognition of GCMS testing in the scientific

community. Chancey testified that GCMS testing was well-respected in the scientific

community and confirmed that she had recorded the results of her testing in this case

in a lab report. The lab report was then admitted into evidence without objection.

Following the admission of her lab report, Chancey testified without objection that it

was her opinion that the substance the informant received from Defendant “was

material containing methamphetamine, Schedule II.”

 At the close of the State’s evidence, Defendant moved to dismiss all charges for

insufficient evidence, and the trial court denied Defendant’s motions. Defendant did

not put on evidence.

 4
 STATE V. SASEK

 Opinion of the Court

 C. Verdicts and Sentencing

 The jury convicted Defendant of possession of methamphetamine, possession

with intent to sell or deliver a schedule II controlled substance, sale of

methamphetamine, and delivery of methamphetamine. Defendant then pleaded

guilty to having attained habitual felon status.

 Prior to sentencing, Defendant admitted that he failed to “[c]ommit no criminal

offense” in violation of his probation, as alleged in the 17 May 2017 violation report.

The trial court then found that Defendant had violated his probation based solely on

the methamphetamine-related violation alleged in the 17 May 2017 violation report.

 As part of Defendant’s habitual felon plea, the parties agreed that any

sentences activated as a result of Defendant’s revocation of probation would run

concurrently with sentences imposed by the jury’s verdicts. The trial court sentenced

Defendant to 84 to 113 months imprisonment for possession with intent to sell or

deliver a schedule II controlled substance; 96 to 131 months imprisonment for sale of

methamphetamine, to run consecutively; and reactivated the suspended sentence of

8 to 19 months imprisonment for violation of probation, to run concurrently. The

court arrested judgment on Defendant’s remaining convictions. Defendant gave

notice of appeal in open court.

 II. Analysis

 5
 STATE V. SASEK

 Opinion of the Court

 Defendant presents two arguments arising from the 18 March 2019 trial: (1)

the trial court erred by allowing Chancey to present her expert opinion without

proper foundation; and (2) there was no justifiable reason for the trial court’s delay

in holding Defendant’s probation revocation hearing after his probation expired. We

address each issue in turn.

 A. Admission of Expert Testimony

 Defendant challenges the trial court’s admission of Chancey’s expert opinion

that the baggie the informant received from Defendant contained methamphetamine,

a schedule II controlled substance. However, Defendant made no objections at trial

during any stage of Chancey’s testimony. Trial judges have a special obligation to

ensure that expert testimony “is not only relevant, but reliable[,]” but “an

unpreserved challenge to the performance of a trial court’s gatekeeping function in

admitting opinion testimony in a criminal trial is subject to plain error review in

North Carolina state courts.” State v. Hunt, 250 N.C. App. 238, 245–46, 792 S.E.2d

552, 558–59 (2016). Plain error review requires a showing by the defendant that a

“fundamental error occurred at trial” which “had a probable impact on the jury’s

finding that the defendant was guilty.” State v. Lawrence, 365 N.C. 506, 518, 723

S.E.2d 326, 334 (2012) (citations and quotation marks omitted).

 Proof that the substance at issue is a controlled substance is a requisite

element for the crimes of possession with intent to sell or deliver a schedule II

 6
 STATE V. SASEK

 Opinion of the Court

substance and sale of methamphetamine. See State v. Bridges, 257 N.C. App. 732,

733, 810 S.E.2d 365, 367, review denied, 371 N.C. 339, 813 S.E.2d 856 (2018); N.C.

Gen. Stat. § 90-95(a)(1) (2017). Methamphetamine is a schedule II controlled

substance in North Carolina. N.C. Gen. Stat. § 90-90(3)(c) (2017). “[T]he burden is

on the State to establish the identity of any alleged controlled substance that is the

basis of the prosecution.” State v. Ward, 364 N.C. 133, 147, 694 S.E.2d 738, 747

(2010). Expert witness testimony describing “some form of scientifically valid

chemical analysis” is ordinarily necessary to identify a controlled substance, unless

the State can show beyond a reasonable doubt that some other method of

identification is sufficient. Id.1

 Rule 702 of the North Carolina Rules of Evidence states that “if scientific,

technical or other specialized knowledge will assist the trier of fact to understand the

evidence or to determine a fact in issue,” the testimony of an expert witness as to his

or her opinion is admissible if the following can be shown:

 (1) The testimony is based upon sufficient facts or
 data.

 (2) The testimony is the product of reliable
 principles and methods.

 1 Contrary to Defendant’s assertion that “[c]ontrolled substances can only be identified through
the use of chemical analysis[,]” our Supreme Court has held that “the absence of an admissible
chemical analysis of the substance that defendant allegedly possessed does not necessitate a
determination that the record evidence failed to support the jury’s decision to convict defendant of
possessing [a controlled substance].” State v. Osborne, 372 N.C. 619, 631, 831 S.E.2d 328, 336 (2019).

 7
 STATE V. SASEK

 Opinion of the Court

 (3) The witness has applied the principles and
 methods reliably to the facts of the case.

N.C. Gen. Stat. § 8C-1, Rule 702(a) (2017). Application of this “three-pronged

reliability test” is a preliminary question to be determined at the discretion of the

trial court, reversible only upon a showing that the court abused its discretion. State

v. McGrady, 368 N.C. 880, 892–893, 787 S.E.2d 1, 10–11 (2016). Where the State

seeks to prove the identity of a controlled substance via expert testimony, such

testimony is admissible only when it is “based on a scientifically valid chemical

analysis and not mere visual inspection.” Ward, 364 N.C. at 142, 694 S.E.2d at 744.

 Defendant contends that “[t]he trial court abused its discretion when it

admitted Chancey’s testimony and lab report identifying the substance in question

as methamphetamine because there was an insufficient foundation for this opinion

under Rule 702.” Specifically, Defendant argues that Chancey’s testimony was

admitted without proof that she reliably applied the scientific principles and methods

of GCMS testing to the facts of this case. Defendant further reasons that this error

was prejudicial because, without the expert’s testimony, the State failed to produce

evidence that the substance the informant received from Defendant was a controlled

substance.

 Defendant proposes that the present case is analogous to our Court’s decision

in State v. McPhaul, 256 N.C. App. 303, 808 S.E.2d 294 (2017). In McPhaul, an expert

fingerprint examiner testified to her opinion that the defendant’s fingerprints

 8
 STATE V. SASEK

 Opinion of the Court

matched fingerprint impressions found on material evidence in his murder trial. Id.

at 313–16, 808 S.E.2d at 303–05. The examiner began her testimony by explaining

that each person’s fingerprints contain distinguishing characteristics known as

“minutia” points that can be used to identify the owner of the fingerprints. Id. at 314,

808 S.E.2d at 304. She described the method she generally used to identify

fingerprints. Id. She then confirmed that procedure was the “same examination

technique as is commonly used in the field of latent print identification[,]” and even

that “she employed this procedure while conducting her examination in [the] case.”

Id. at 315, 808 S.E.2d at 304. But, when asked how she arrived at her opinion that

the fingerprint sample she tested matched the defendant’s fingerprints, the examiner

testified simply that the described procedure, her training, and her experience led

her to that conclusion without explaining how she applied that procedure in the

defendant’s case. Id. at 315–16, 808 S.E.2d at 304–05. “Without further explanation

for her conclusions, [the examiner] implicitly asked the jury to accept her expert

opinion that the prints matched.” Id. at 316, 808 S.E.2d at 305. This Court held that

the examiner “failed to demonstrate that she ‘applied the principles and methods

reliably to the facts of the case,’ as required by Rule 702(a)(3),” and held that “the

trial court abused its discretion by admitting this testimony.” Id.

 The expert testimony in this case is materially indistinguishable from that in

McPhaul. At trial, Chancey explained the scientific details of color testing and

 9
 STATE V. SASEK

 Opinion of the Court

infrared testing, then explained how she applied the tests to the substance and the

results she obtained. Chancey then explained the scientific procedure for GCMS

testing and confirmed that it was a reliable and a well-respected process but was cut

off before she could explain how she applied GCMS testing in the present case.

Rather, Chancey’s lab report recording her GCMS testing procedures and results was

admitted into evidence and published to the jury.

 We note that Chancey appeared fully prepared to explain how she applied

GCMS testing in this case but was never given the opportunity. Chancey’s report,

which was admitted in evidence in lieu of further testimony concerning her

application of GCMS testing in this case, states only that the “[p]lastic bag containing

crystalline material” was “[e]xamine[d] for controlled substances” and found to

contain methamphetamine. Like the examiner in McPhaul, Chancey “provided no

such detail in testifying how she arrived at her actual conclusions in this case[,]” and

her testimony instead “implicitly asked the jury to accept her expert opinion.”

McPhaul, 256 N.C. App. at 316, 808 S.E.2d at 305 (emphasis in original). We

therefore hold that the trial court erred by admitting Chancey’s expert opinion

testimony without first requiring that she explain how she applied GCMS testing in

this case.

 Nonetheless, Defendant has not met the high threshold to establish plain

error. Our Court has previously held a criminal defendant failed to establish plain

 10
 STATE V. SASEK

 Opinion of the Court

error when an expert testified that a chemical analysis was performed, but the

evidence “lack[ed] any discussion of that analysis.” State v. Piland, ___ N.C. App.

___, ___, 822 S.E.2d 876, 888 (2018). In Piland, the defendant was discovered in

possession of a pill bottle containing a large quantity of white tablets. Id. at ___, 822

S.E.2d at 881 (2018). A drug examiner testified that she “performed a chemical

analysis on a single tablet to confirm that they did in fact contain what the

manufacturer had reported” and concluded that the tablets were indeed hydrocodone,

but did not elaborate further as to how she conducted her analysis. Id. at ___, 822

S.E.2d at 888. The Piland Court held that, though “it was error for the trial court not

to properly exercise its gatekeeping function of requiring the expert to testify to the

methodology of her chemical analysis[,]” the expert’s results were not clearly

“baseless speculation” and “her testimony was not so prejudicial that justice could not

have been done.” Id.

 We reach the same conclusion here. Chancey testified that she conducted the

GCMS test in this case, obtained positive results identifying the substance the

informant received from Defendant to be methamphetamine, and produced a lab

report recording the results of her analysis. We hold, as we did in Piland, that the

trial court’s error “does not amount to plain error because the expert testified that

she performed a ‘chemical analysis’ and as to the results of that chemical analysis.”

Id.

 11
 STATE V. SASEK

 Opinion of the Court

 B. Revocation of Probation

 Defendant argues, and the State concedes, that the trial court erred by

activating his suspended sentence without making a finding that good cause existed

to revoke his probation after the period of probation expired. N.C. Gen. Stat. § 15A-

1344(f)(3) (2017) (“The court may . . . revoke probation after the expiration of the

period of probation if all of the following apply: . . . (3) The court finds for good cause

shown and stated that the probation should be . . . revoked.”); State v. Morgan, 372

N.C. 609, 616, 831 S.E.2d 254, 259 (2019) (“We conclude that both the plain language

of N.C.G.S. § 15A-1344(f)(3) and our prior decisions . . . compel the conclusion that

the trial court erred by activating defendant’s sentences without first making such a

finding.”). Defendant’s probation expired in January 2018. The trial court activated

Defendant’s suspended sentence in March 2019, fourteen months later. Our review

of the trial court’s judgments confirms that the court made no findings that good

cause existed for this delay.

 Defendant contends that the trial court’s error requires this Court to vacate

his probation revocation without remand to the trial court because “the record is

devoid of any evidence that could support a finding on remand that good cause exists

to revoke [Defendant’s] probation despite the expiration of his probationary period.”

We agree.

 12
 STATE V. SASEK

 Opinion of the Court

 Ordinarily, when the trial court fails to make a material finding of fact, the

case must be remanded so that proper findings can be made. State v. Bryant, 361

N.C. 100, 104, 637 S.E.2d 532, 535 (2006). However, when the trial court fails to

make a finding of good cause under N.C. Gen. Stat. § 15A-1344(f)(3), we may only

remand where “the record contain[s] sufficient evidence to permit the necessary

finding of ‘reasonable efforts’ by the State to have conducted the probation revocation

hearing earlier.” Morgan, 372 N.C. at 618, 831 S.E.2d at 260 (citing Bryant, 361 N.C.

at 104, 637 S.E.2d at 535–536). Our Courts have vacated without remand when the

record on appeal did not show that the State made reasonable efforts to conduct an

earlier probation hearing and the defendant’s probation was revoked as little as

thirty-six days after its expiration. State v. Camp, 299 N.C. 524, 528, 263 S.E.2d 592,

595 (1980).

 Here, a probation hearing on Defendant’s 17 May 2017 violation report was

initially scheduled for 13 June 2017, and the record does not indicate why the hearing

did not take place until March 2019, fourteen months after his probation expired.

The State contends that “[i]t is reasonable to infer from the record that Defendant

wished to proceed on the underlying possession of methamphetamine charge first,

before proceeding on his probation violations[.]” However, nothing in the record

indicates this was Defendant’s intention, and a criminal conviction is not required for

the trial court to revoke probation for a defendant’s commission of a criminal act in

 13
 STATE V. SASEK

 Opinion of the Court

violation of probation. “All that is required in revoking a suspended sentence is

evidence which reasonably satisfies the judge in the use of his sound discretion that

a condition of probation has been willfully violated.” State v. Monroe, 83 N.C. App.

143, 145, 349 S.E.2d 315, 317 (1986); see also State v. Debnam, 23 N.C. App. 478, 480,

209 S.E.2d 409, 410 (1974) (holding that the trial court may revoke probation based

upon its own independent review of the facts surrounding an alleged crime even if a

formal trial on the matter did not result in a guilty judgment). The record does not

show why Defendant’s probation hearing was not held in June 2017, or, in any event,

at some time prior to the expiration of Defendant’s probation in January 2018.

Therefore, we vacate the trial court’s judgments revoking Defendant’s probation

without remand. Bryant, 361 N.C. at 101, 637 S.E.2d at 534 (vacating without

remand judgment revoking the defendant’s probation after its expiration because the

trial court made no finding that good cause existed, the court failed to hold the

probation hearing on an earlier scheduled date, and “the record fail[ed] to disclose

any specific reason for this failure”).

 III. Conclusion

 We hold that the trial court did not commit plain error by allowing Chancey to

offer her expert opinion that the substance the informant received from Defendant

was methamphetamine. We hold that the trial court erred by not making the

required finding that good cause existed to revoke Defendant’s probation after his

 14
 STATE V. SASEK

 Opinion of the Court

probation period had expired. Because the record contains no evidence that the State

made reasonable efforts to conduct the revocation hearing at a sooner date, we vacate

the trial court’s judgments revoking Defendant’s probation.

 NO PLAIN ERROR IN PART, VACATED IN PART.

 Chief Judge McGEE concurs.

 Judge BERGER concurs by separate opinion.

 15
 No. COA19-769, 770 – State v. Sasek

 BERGER, Judge, concurring in separate opinion.

 I concur in result only as to both issues.

 Specifically, to the issue of Defendant’s probation violation, I disagree with the

majority that the record contains “no evidence” of reasonable efforts. Admittedly, the

record does not contain court calendars, motions to continue, or orders for arrest that

would aid this Court’s review. Also, there is no notice of hearing or other evidence in

the record that Defendant sought an earlier hearing on the probation violations.

 However, there is some evidence in the record of reasonable efforts such that

remand for additional findings would be appropriate. See State v. Morgan, 372 N.C.

609, 618, 831 S.E.2d 254, 260 (2019) (remanding for additional findings appropriate

where some “evidence exists that would allow the trial court on remand to make a

finding of ‘good cause shown and stated’[.]”)

 Here, Defendant was served with probation violations on April 10, 2017.

Defendant was alleged to have violated the terms and conditions of his probation by

committing the criminal offense of possession of methamphetamine in Yancey County

on February 15, 2017. Defendant was charged with possession of methamphetamine

on May 15, 2017, in Yancey County File Number 17 CR 50260. On November 27,

2017, Defendant was indicted for attaining habitual felon status and multiple drug

charges, including possession of methamphetamine, in Yancey County File Number

17 CRS 50260.
 STATE V. SASEK

 BERGER, J., concurring in separate opinion

 The record indicates that Defendant was initially appointed an attorney, but

subsequently retained private counsel. Defendant’s counsel made a general

appearance on the criminal charges and probation violation on or about June 26,

2018, although the Notice of General Appearance in the record contains no file stamp.

Defendant waived appointed counsel on July 9, 2018.

 Defendant’s criminal matters, including 17 CRS 50260, came on for trial in

March 2019. Following his conviction of the underlying drug offenses, including 17

CRS 50260, Defendant pleaded guilty to attaining habitual felon status. The State

and Defendant announced to the trial court at sentencing that the two sides had an

agreement concerning Defendant’s probation violations. The agreement was that the

sentences for Defendant’s probation violations would run concurrently with the

habitual felon sentence. This agreement between the State and Defendant is some

evidence of good cause, and thus, is sufficient to remand to the trial court for

additional findings of fact.

 -2-